**Wayne E. COLLINS, II, et al., Plaintiffs,**

v.

**SHEARSON/AMERICAN EXPRESS, INC., Defendant.**

**Misc. No. 85–0260.**

United States District Court, District of Columbia.

Oct. 22, 1986.

Nathan S. Bergerbest, G. Lindsay Simmons, Cotten, Day & Doyle, Washington, D.C., Charles F. Brega, Stuart N. Bennett, Mark L. Ross, Roath & Brega, Denver, Colo., for plaintiffs.

Susan C. Ervin, Commodity Futures Trading Com'n, Washington, D.C., for Commodity Futures Trading Com'n.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Plaintiffs have asked the Court to compel the Commodity Futures Trading Commission to produce documents pursuant to a subpoena duces tecum. According to plaintiffs, these documents may help to prove that Shearson/American Express, Inc., conspired with a Thomas D. Chilcott in a form of commodities fraud known as a "Ponzi game."[1] For the reasons stated below, the motion will be denied.

Plaintiffs are Colorado residents who invested some $5 million with Chilcott between 1974 and 1981. Chilcott later was investigated by the Commission and convicted of violating federal securities and commodities laws. In 1982, plaintiffs sued Shearson in the U.S. District Court for the District of Colorado, alleging that the company conspired with Chilcott in his fraud scheme. It is in connection with the prosecution of that case that plaintiffs served a subpoena duces tecum on the Commission, demanding that it produce documents relating to its investigation of Chilcott and his companies.

In its opposition, the Commission asserts a number of privileges including the attorney-client privilege, the work product doctrine, and the deliberative processes privilege. However, the Commission relies most heavily on the privilege for law enforcement investigatory files.

Both parties agree that the leading case in this Circuit on this matter is *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336 (D.C.Cir.1984). The *Friedman* court explained that when a government agency asserts its "qualified common-law privilege" for law enforcement investigatory files under Fed.R.Civ.P. 26(b), the agency must offer more than a pro forma claim of privilege for all documents requested. Instead, it bears the burden of asserting its privilege in a "deliberate, considered and reasonably specific manner." *Friedman*, 738 F.2d at 1342. The court further stated that the official claiming the privilege must examine the documents personally and must state specifically the rationale for the assertion of the privilege. Once the agency asserts its privilege property, the party seeking the documents has the duty to demonstrate the need for disclosure. The court must then weigh the competing interests. *Id.*[2]

---

1. The underlying litigation for which these documents are sought is *Collins v. Shearson/American Express, Inc.*, No. 82–C–280 (D.Colo.). Plaintiffs assert an urgent need for these documents by November 3, 1986, their pretrial date in the Colorado litigation.

2. The *Friedman* court suggested ten factors for consideration in this balance. These are: (1) the extent to which disclosure will thwart government processes by discouraging citizens from giving the government information; (2) the impact on those who give information of

The first question to be considered thus is whether the Commodities Futures Trading Commission has examined these documents and made specific objections to their disclosure. Affidavits filed by the Commission demonstrate that it clearly has met its burden in this regard. For example, Thomas B. Goodbody, a supervisory attorney with the Commission's Division of Enforcement, has personally reviewed or supervised all parts of the Commission's files that may be responsive to plaintiffs' requests. Other affidavits also provide a picture of thorough and comprehensive review by the Commission. Moreover, the responsible employees of the Commission have made specific claims of privilege and have supported those claims with specific reasons. For example, the Second Declaration of Karen Matteson explains that disclosure of a transcript of testimony by an individual who performed accounting work for Chilcott would not only discourage other citizens from relaying information to the government, but might also harm this witness' employment prospects. All the evidence leads the Court to conclude that the Commission has not taken its examination and analysis of these documents lightly.

To be sure, the Commission's determination of privilege does not bind the Court. Rather, the Court must examine the Commission's reasons for nondisclosure and weigh them against plaintiffs' need for the documents.

The problem is that plaintiffs have made a very weak showing of any such need.

Plaintiffs claim that some of the material in these documents is unavailable from other sources because discovery in the Colorado litigation closed on October 15, 1985. But all that proves is that plaintiffs' "urgent need"—if such a need exists—is largely a result of their own inaction. Although the Colorado action had been pending for some three years, plaintiff waited until just before the discovery deadline to serve the broad subpoenas at issue here. Further, plaintiffs have also resisted the Commission's attempts to expedite document review by refusing to narrow their discovery request. The Commission, on the other hand, has acted responsibly and conscientiously and has released certain of the documents. Further, the Commission has not argued, despite plaintiffs' assertion otherwise, that its privilege to these documents is in any way "absolute;" to the contrary, it has correctly pointed out that plaintiffs have not even attempted to take advantage of some of the possible alternate sources for this information.[3]

Moreover, plaintiffs confuse the required showing of need for documents with an easier showing of relevance. They urge that "[a]ny evidence which ... hints at the nature of Chilcott's scheme or defendant's participation is relevant to the subject matter of the pending motion."[4] This undoubtedly is true and might suffice to gain access to documents in routine discovery. When an agency properly claims that documents are privileged, however, the Court,

having their identities disclosed; (3) potential chill on governmental self-evaluation and program improvement; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the information is an actual or potential defendant in any criminal proceeding; (6) whether the investigation is complete; (7) whether intradepartmental disciplinary proceedings may arise from the investigation; (8) whether plaintiff's suit is brought in good faith; (9) availability of the information elsewhere; and (10) the importance of the information to plaintiff's case. *Friedman,* 738 F.2d at 1342–43.

3. One particular request by plaintiffs is telling. In their "Supplement to Response to Sur Reply,"

plaintiffs attempted to show that the Commission has acted irresponsibly in protecting the deposition transcript of a Ross Bagully; plaintiffs claim to have received the document from another source. As the Commission points out, however, it asserted a privilege to this transcript only in regards to portions that reveal "names and business transactions of customers *other than plaintiffs.*" The Commission specifically authorized release of other portions, but plaintiff apparently made no attempt to review the particular document.

4. Memorandum in Reply to the Opposition of Commission to Plaintiffs' Motion to Compel at 12.

as noted above, must look beyond the issue whether the documents sought are simply relevant. If that were the only test, the rules of privilege would be relatively meaningless—especially since discovery normally extends not only to relevant matter but also to material that may lead to the discovery of relevant matter. The *Friedman* court's discussion of privilege supports this distinction, by calling for an inquiry into "the degree of the litigant's need to obtain [the documents] from the governmental agency or officer claiming the privilege." *Friedman,* 738 F.2d at 1341. Relevance is not enough.

In the instant case, the balance between governmental privilege and plaintiffs' need is clearly struck in favor of nondisclosure. Despite plaintiffs' expressed doubts, the Commission has asserted that disclosure of these papers could harm an investigation in process, could harm particular witnesses and stifle witnesses in general, and very often would have no bearing whatsoever on plaintiffs' inquiry. On the other side of the scales, plaintiffs have made only a weak showing that they need these documents or that, if so, the documents are unavailable elsewhere.

For the reasons stated, it is this 22nd day of October, 1986

ORDERED that plaintiffs' motion to compel discovery be and it is hereby denied.