ROGERS, Circuit Judge, concurring.
I would limit the scope of our jurisdiction and merits holdings in the following manner:
I.
The court holds that it has jurisdiction under the collateral order doctrine, see Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), over an interlocutory challenge to a protective order allowing discovery of third-party applications submitted to the Small Business Administration (“SBA”) with the promise of “confidentiality] to the extent permitted by law.” However, there is no need to suggest that one’s party’s unilateral assertion of a compromised “trade secret” or “privacy interest” would suffice to meet the “importance” prong of the collateral order doctrine. See Digital Equip, v. Desktop Direct, Inc., 511 U.S. 863, 879, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); United States v. Philip Morris Inc., 314 F.3d 612, 617-19 (D.C.Cir.2003). Such liberality would not make for a “narrow” exception to the finality rule, see Digital Equip., 511 U.S. at 868, 114 S.Ct. 1992, and could open the way for intermediate appellate review of all manner of discovery disputes.
The Fourth Circuit in MDK, Inc. v. Mike’s Train House, Inc., 27 F.3d 116 (4th Cir.1994), rejected collateral order review of the “trade secret” — type dispute on the basis of its concern about the difficulty of cabining the notion of a trade secret:
The dangers of a trade secrets exception to the nonappealability of discovery orders should be apparent. A judicially created exception to nonappealability for categories of sensitive information is the quintessential slippery slope.
Mike’s Train House, 27 F.3d at 120. I share this concern, but conclude that it is answered in this instance because the Trade Secrets Act, 18 U.S.C. § 1905 (2000),[1] generally protects this type of information from disclosure when it is in the hands of a government agency, and the *901 agency has an important institutional interest in full disclosure by third-party applicants to its licensing program.
The SBA described, through three declarations, the sensitive nature of the commercial information contained in the application for licensing (known as the Management Assessment Questionnaire, or “MAQ”). As the court acknowledges, Op. at 897-98, the MAQs contain information that the SBA describes as of the type “routinely protected” under the Trade Secrets Act, 18 U.S.C. § 1905, and under Exemption 4 (regarding trade secrets and commercial or financial information) of the Freedom of Information Act (“FOIA”), 5 U.S.C § 552(b)(4) (2000). Although Diamond Ventures disputes the sensitivity of some information requested by the MAQs, it admits the MAQs “are likely to contain financial information of the kind whose disclosures is prohibited by the Trade Secrets Act if such disclosure is not ‘authorized by law.’ ” Appel-lee’s Br. at 3-M. Given that venture capital firms may compete one with another for private funding, the disclosure of information of the sort requested by the MAQ could “cause substantial harm to the competitive position of the person from whom the information was obtained,” McDonnell Douglas Corp. v. Dep’t of the Air Force, 375 F.3d 1182, 1187 (D.C.Cir.2004) (citing Nat’l Parks & Conservation Ass’n v. Morton, 498 F.2d 765, 770 (D.C.Cir.1974)), and thus would fall within the protections of the Trade Secrets Act, which by its plain letter prohibits release by the SBA of information on the “source of any income, profits, losses, or expenditures of any person [e.g., the applicants who submit MAQs], firm, ... or association,” 18 U.S.C. § 1905. Further, the SBA submitted declarations from current and former SBA officials stating that the SBA has successfully invoked FOIA Exemption 4 to protect MAQ information from disclosure.[2] Additionally, the SBA maintains, and Diamond Ventures does not dispute, that full disclosure of the information requested by the MAQs is critical to the success of the SBA’s Small Business Investment Company program. See Appellant’s Br. at 21-22; Op. at 897-98. Trade Secrets Act protections are at least coextensive with the protections afforded under FOIA Exception 4. McDonnell Douglas Corp., 375 F.3d at 1185 (citing CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1151 (D.C.Cir.1987)).
Consequently, although the protection afforded by the Trade Secrets Act is not an evidentiary privilege, as was the case in the interlocutory appeals In re Sealed Case (Medical Records), 381 F.3d 1205, 1210 (D.C.Cir.2004), and Philip Morris, 314 F.3d at 617-18, the protections in this instance are similar to the statutory bar in In re England, 375 F.3d 1169, 1176 (D.C.Cir.2004). The statutory protections and the institutional interests inform the *902 analysis of the “importance” element of the Cohen analysis and limit the scope of the holding on jurisdiction that is necessary to hear this appeal. Under this analysis, the court has no occasion to consider whether a claim that a discovery order will compromise “privacy” or “trade secrets” gives rise to an appealable dispute in the absence of (1) Trade Secret Act (or comparable statutory) restrictions upon the party holding the information, see England, 375 F.3d at 1176, and (2) a governmental interest, similar to the SBA’s institutional and programmatic interest in full disclosure by third parties, see Op. at 897-98, that might be compromised were the information made available during discovery to the principals of a potential licensee. Here, both considerations increase the relative importance of the interests that would potentially go unprotected without immediate appellate review. See England, 375 F.3d at 1176; Philip Moms, 314 F.3d at 617. I would leave for another day the question of whether the court would have jurisdiction under the collateral order doctrine where a party points only to the bare standard of Fed.R.Civ.P. 26(c)(7) as the source of its protected interest from disclosure. See generally, 8 Wright, Miller & Marcus, Federal Practice And Procedure, Civ.2d § 2043 (2006).
II.
Turning to the merits, it suffices to hold that the district court abused its discretion by failing to consider the legally relevant factors. See generally Kickapoo Tribe in Kan. v. Babbitt, 43 F.3d 1491, 1497 (D.C.Cir.1995). As the court concludes, Op. at 898-900, the district court failed both to address the SBA’s promise of confidentiality to third-party applicants and to consider the fact that third-party applicants compete with each other in the market for venture capital funding; additionally, the district court considered the legally irrelevant factor of Diamond Venture’s inability to hire an expert’ In light of these errors, it is apparent the district court failed to balance the legally relevant factors. See Sealed Case (Medical Records), 381 F.3d at 1217; In re Sealed Case, 856 F.2d 268, 272 (D.C.Cir.1988); cf. LaSalle Extension Univ. v. FTC, 627 F.2d 481, 484 (D.C.Cir.1980). The SBA does not challenge the protective order, with its use limitation, insofar as it allows counsel for Diamond Ventures to review the MAQs; it challenges only the provision allowing principals of Diamond Ventures to review the MAQs. Op. at 898 n. 9. This court is not well-positioned to conclude that the district court “overvalued Diamond Ventures’ purported need for an expert to review the MAQs,” Op. at 899, and particularly that we may be “confident” that any illegal redlining that might be revealed by the MAQs and SBA’s approval patterns may be apparent to “counsel without an expert’s assistance,” id. at 899. Such conclusions run counter to the district court’s findings, which are predicated upon its greater familiarity with the litigation, and are unnecessary, because they are not germane to the question of whether the district court balanced the relevant factors.

. The Trade Secrets Act prohibits, in relevant respects, employees of the federal government *901 publishing], divulging], disclosing], or making] known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties ... which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association ....
18 U.S.C. § 1905.

. See Decl. of Margaret Theresa Dennin, Chief Administrative Officer for SBA Investment Division, ¶ 5 (“SBA has never disclosed confidential business information contained in MAQs in response to a FOIA request ... absent an appropriate protective order"); Decl. of Michael K. Wyatt, former SBA General Counsel, ¶ 5 ("SBA takes the position and advises Applicants that their [MAQ] submissions fall within FOIA Exemption 4”); Op. at 896-97.